**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KEVIN WICKHAM**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**BARNES-JEWISH WEST COUNTY HOSPITAL**, a Missouri nonprofit corporation, and **BJC HEALTH SYSTEM d/b/a BJC HEALTHCARE**, a Missouri nonprofit corporation,<br><br>*Defendants*. | ) | Case No. 4:25-cv-01875-RHH<br><br>**JURY TRIAL DEMANDED** |

**<u>FIRST AMENDED COMPLAINT</u>**

Plaintiff Kevin Wickham ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class"), by and through counsel, upon personal knowledge as to Plaintiff's own conduct and on information and belief as to all other matters based upon investigation of counsel, such that each allegation has evidentiary support or is reasonably likely to have evidentiary support upon further investigation and discovery, and for their First Amended Complaint against Defendants, states as follows:

## I. NATURE OF THE ACTION

1. This consumer class action arises from Defendants' deceptive and unfair billing practices concerning warranty replacement medical devices supplied to Defendants at no cost by medical device manufacturers. Defendants failed to transparently disclose in their billing and insurance claim submissions that the warranty replacement medical

devices were supplied to Defendants at no charge. Instead, Defendants embedded the cost of the warranty replacement medical devices as reimbursable, cost bearing components of surgical care and received payment for the same.

2. Defendants' billing and claim submission practices exploit the complexity and opacity of healthcare billing practices. Defendants fail to disclose and obscure material information concerning the no cost nature of warranty replacement devices in their billing and insurance claim submissions, thereby wrongfully enriching themselves at the expense of their patients, including Plaintiff.

3. For example, as more fully set forth herein, Defendants submitted billing and insurance claim data in connection with Plaintiff's revision surgery reflecting a device-related charge in the amount of $36,424.34 associated with the surgical encounter, without transparently disclosing that the replacement internal cochlear implant was provided to Defendants under the manufacturer's warranty at no cost. This practice not only burdens patients with opaque and inflated financial exposures, it also inflates healthcare costs system wide, harming all participants in the healthcare system.

4. When a patient of Defendants needs revision surgery to surgically remove and replace an implantable medical device, under circumstances triggering the applicable warranty provisions, device manufacturers provide a replacement implantable medical device to Defendants at no charge, pursuant to the patient's warranty rights. The patient then receives the replacement implantable medical device during a revision surgery.

5. These replacement implantable medical devices, provided to Defendants at no cost pursuant to medical device manufacturers' respective warranty obligations, are referred to in this complaint as "Warranty Replacement Devices."

6. The Warranty Replacement Devices are ordered by and shipped directly to Defendants' healthcare facilities, because patients cannot obtain them directly from device manufacturers. Patients, including Plaintiff and the Class, necessarily depend upon Defendants to obtain the Warranty Replacement Devices from the device manufacturers/distributors, and they are then surgically implanted into Defendants' respective patients.

7. Warranty Replacement Devices are provided to Defendants at no cost pursuant to warranties issued by device manufacturers or distributors to patients. As such, Defendants do not pay for the Warranty Replacement Devices, and the no cost nature of those devices is material information that must be accurately and transparently reflected and not obscured or embedded within other device related charges in Defendants' billing and insurance claim submissions to patients and payors.

8. Under these circumstances, Defendants must not present, characterize, or submit billing and insurance claim data for Warranty Replacement Devices in a manner that obscures the fact that the device was provided to Defendants at no cost under a manufacturer warranty, and must clearly and accurately disclose the no cost nature of the warranty replacement.

9. Nevertheless, during the relevant time period, Defendants presented and submitted billing and insurance claim data in connection with Plaintiff's and Class

members' revision surgeries that included material device related charges without clearly and accurately disclosing that the replacement implantable medical devices were provided to Defendants at no cost under manufacturer warranties.

10. Plaintiff and the Class seek relief under the Missouri Merchandising Practices Act ("MMPA"), §§ 407.010 et seq., and under Missouri common law for unjust enrichment, money had and received, and civil conspiracy, together with declaratory and injunctive relief to remedy Defendants' deceptive and unfair billing practices described herein.

11. Defendants wrongfully inflated and obscured device related charges associated with Warranty Replacement Devices, thereby increasing patients' financial exposure and downstream economic burdens, and unjustly enriched Defendants at the expense of Missouri consumers.

**II. PARTIES**

12. Plaintiff Kevin Wickham is a natural person domiciled in University City, St. Louis County, Missouri. He is a "person" and "consumer" within the meaning of § 407.010 RSMo.

13. Defendant Barnes-Jewish West County Hospital ("Barnes-Jewish West County" or "BJWC") is a Missouri nonprofit corporation with its principal place of business at 12634 Olive Boulevard, St. Louis, Missouri 63141. It provides hospital and surgical services, including cochlear implant surgeries and revision surgeries. BJWC also performs surgeries and revision surgeries for other implantable medical devices.

14. Defendant BJC Health System d/b/a BJC HealthCare ("BJC HealthCare") is a Missouri nonprofit corporation with its principal office at 4901 Forest Park Avenue, Suite 1200, City of St. Louis, Missouri 63108.

15. On information and belief, BJC HealthCare is the parent and controlling entity of Barnes-Jewish West County and numerous other hospitals and clinics across Missouri. BJC HealthCare and Barnes-Jewish West County are also collectively referred to herein as "Defendants."

**III. JURISDICTION AND VENUE**

16. Plaintiff filed his original complaint in Missouri's 22nd Judicial Circuit Court on November 12, 2025.

17. On December 26, 2025 Defendants filed a Notice of Removal to this court, contending that removal was warranted under 28 U.S.C. § 1441(a) because they alleged this is an action over which this Court has original jurisdiction under 28 U.S.C. § 1331.

18. Defendants thereafter filed a Motion to Dismiss on January 2, 2026.

19. Plaintiff now timely files this First Amended Complaint as a matter of course pursuant to FRCP 15(a)(1)(B).

20. Plaintiff asserts only claims arising under Missouri statutory and common law and does not assert any claim arising under the Constitution, laws, or treaties of the United States. Resolution of Plaintiff's claims does not require interpretation or application of federal law.

21. If this court ultimately determines that it has subject matter jurisdiction over this action, then this court has personal jurisdiction over Defendants because Defendants

transact business in Missouri and because a substantial part of the events giving rise to Plaintiff's claims arise out of Defendant's challenged in-state actions, including Defendants' presentation and submission of billing and insurance claim data in Missouri in connection with Plaintiff's revision surgery and associated device charges. For the same reasons, Missouri's 22nd Judicial Circuit Court, where Plaintiff originally filed this action, also has personal jurisdiction over Defendants.

22. If this court ultimately determines that it has subject matter jurisdiction over this action, then venue is proper in this Court pursuant to 28 U.S.C. §1391(b), because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, including Defendants' billing and submission of insurance claim data in connection with Plaintiff's revision surgery performed at one of the Defendants' hospitals located in this District. For the same reasons, venue also remains proper in Missouri's 22nd Judicial Circuit Court, where Plaintiff originally filed this action.

## IV. FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### A. Background: Warranty Replacement Devices

23. Manufacturers of implantable medical devices—such as, but not limited to, cochlear implants—routinely provide no cost Warranty Replacement Devices when a previously implanted medical device experiences a problem that triggers warranty coverage.

24. These replacement devices are shipped directly to health care facilities for use in revision surgeries. Because the manufacturer provides the Warranty Replacement

Devices at no charge, the health care facility does not pay for the Warranty Replacement Devices.

25. Defendants presented and submitted billing and insurance claim data in connection with Plaintiff's and Class members' revision surgeries that treated Warranty Replacement Devices as though they were acquired at cost, without disclosing that such devices were actually provided to Defendants at no cost.

26. In doing so, Defendants failed to disclose material information to patients and payors regarding the no-cost nature of Warranty Replacement Devices, thereby obscuring the true economic basis for the device-related charges associated with revision surgeries.

27. Defendants' communications omitted material information concerning the no cost nature of Warranty Replacement Devices provided pursuant to manufacturer warranties. As a result, the billing communications, invoices, and account statements presented device-related charges without clearly and accurately disclosing that such devices were actually provided to Defendants at no cost.

28. Plaintiff and other Class members reasonably relied on Defendants' billing communications, invoices, and statements of account in understanding the nature and basis of the charges associated with their revision surgeries. As a result of Defendants' presentation of inflated and undisclosed device related charges, some Class members paid inflated patient-responsibility amounts, including deductibles and co-insurance, while others—including Plaintiff—were subjected to increased financial exposure through

inflated subrogation/reimbursement lien claims asserted against their third-party liability claim recoveries, thereby imposing downstream economic harm.

29. The harm to payors and the broader health care system is derivative of, and flows from, Defendants' primary consumer deception directed at Plaintiff and the Class. As a result of Defendants' conduct, payors pay more than they should.

**B. Plaintiff's Experience**

30. On May 20, 2025, Plaintiff underwent a cochlear implant revision surgery at BJWC, in St. Louis County, Missouri.

31. The replacement cochlear implant—a HiRes Ultra cochlear implant manufactured by Advanced Bionics, LLC ("AB")—was provided by AB to Defendants pursuant to its warranty to Plaintiff, at no cost to Defendants.

32. BJC HealthCare's own purchase records reflect this fact. A purchase order dated May 14, 2025, in connection with the provision of the Warranty Replacement Device to be used during Plaintiff's upcoming revision surgery states:

> "IMPLANT UNDER WARRANTY AT NO COST. ZERO DOLLAR QUOTE ATTACHED." **[Exhibit 1, attached hereto and incorporated herein by reference]**

33. Although BJC HealthCare acquired Plaintiff's Warranty Replacement Device at no cost pursuant to applicable warranty provisions, Defendants presented and submitted billing and insurance claim data in connection with Plaintiff's revision surgery that included a $36,424.34 device related charge. As a result of that billing and claim presentation, Defendants obtained reimbursement exceeding $30,000 based on device related charges presented as part of the claim for Plaintiff's revision surgery, without

clearly or accurately disclosing that the Warranty Replacement Device was provided at no cost pursuant to a device manufacturer's warranty.

34. Plaintiff incurred and paid patient responsibility amounts in connection with his revision surgery, as reflected on Defendants' billing statements and his insurer's explanation of benefits.

35. Defendants' billing and claim related communications provided to Plaintiff in connection with his revision surgery did not disclose that the Warranty Replacement Device was supplied to Defendants at no cost pursuant to a manufacturer's warranty.

**C. Pattern and Practice**

36. Defendants' conduct described above was not an isolated incident. On information and belief, and based on non-public information obtained in the course of counsel's representation of other patients, Defendants have engaged in similar billing and claim submission practices in connection with other revision surgeries involving Warranty Replacement Devices at BJWC, including at least one such surgery performed on August 15, 2023 (the "2023 Revision Surgery").

37. Defendants billed more than $60,000 for the Warranty Replacement Device used in the 2023 Revision Surgery despite the fact that Defendants received that Warranty Replacement Device for free, pursuant to the device manufacturer's warranty obligations.

38. When counsel for that patient challenged the overbilling with Defendants, they did not dispute the contentions and corrected the billing to reflect that they received the Warranty Replacement Device at no charge thereby lowering the billed amount significantly.

39. This pattern and practice demonstrates that Defendants maintained and implemented a system wide billing and claim submission policy that failed to account for or disclose the no cost nature of Warranty Replacement Devices, resulting in the presentation of device related charges that misrepresented Defendants' acquisition costs and caused Missouri consumers to be overcharged.

## V. COMMON ENTERPRISE AND JOINT CONTROL ALLEGATIONS

40. Defendant BJC HealthCare is the parent organization of Barnes-Jewish West County Hospital and numerous other hospitals and clinics operating under the "BJC" brand throughout Missouri.

41. On information and belief, BJC HealthCare sets, directs, and enforces system wide purchasing, billing, and compliance policies, including those governing Warranty Replacement Devices.

42. On information and belief, all BJC-affiliated hospitals and facilities, including BJWC, use a centralized procurement and billing system maintained by BJC HealthCare that generates uniform purchase orders, bills, and claims for payment submitted to payors.

43. BJC HealthCare issues standardized billing manuals, coding directives, and revenue-cycle protocols applicable to all affiliates, including instructions on the proper billing procedures and methods for implantable medical devices. BJC HealthCare's publicly available Collection Policy is directed at patients from BJC HealthCare on behalf of its "member hospitals," for example.

44. BJC HealthCare has implemented policies and procedures to monitor and audit affiliates' billing through its Revenue Integrity and/or Corporate Compliance departments.

45. On information and belief, BJC HealthCare and its affiliates share some common officers and directors, reflecting direct operational control and unity of management.

46. On information and belief, BJC HealthCare consolidates its affiliates' financials in system-wide statements and benefits financially from the inflated revenue generated by its affiliates' improper billing practices.

47. Accordingly, BJC HealthCare and BJWC operate as a single, integrated enterprise, jointly responsible for the billing policies and practices described herein.

48. BJC HealthCare has previously been sued in this Court as the responsible corporate entity for system-wide practices across its affiliated hospitals.

## VI. CLASS ALLEGATIONS

49. Plaintiff brings this action under Mo. R. Civ. P. 52.08 on behalf of himself and all others similarly situated, defined as follows:

> All citizens of Missouri who, within the applicable limitations period, were billed by BJC HealthCare and/or Barnes-Jewish West County Hospital, and/or any other BJC HealthCare affiliated hospital or facility located in the State of Missouri for a warranty-replacement medical device that was supplied to the system, hospital, or facility at no cost, and for which the system, hospital, or facility sought or obtained payment from the patient and/or the patient's payor.

50. Excluded from the Class are Defendants, their officers and directors, their subsidiaries and affiliates, any entity in which Defendants have a controlling interest, and

the legal representatives, heirs, and assigns of any such excluded persons. Also excluded are any judicial officers presiding over this matter and members of their immediate families.

51. Plaintiff reserves the right to amend the Class definition if further investigation, discovery, or litigation indicates that the definition should be expanded, narrowed, or otherwise modified.

52. The Class is limited to Missouri citizens billed by BJC-affiliated hospitals and facilities physically located in Missouri, including but not limited to Barnes-Jewish West County Hospital, Barnes-Jewish Hospital, Missouri Baptist Medical Center, St. Peters Hospital, Progress West Hospital, and other BJC HealthCare entities operating within the State of Missouri.

53. This definition confines the Class to Missouri transactions and Missouri citizens, ensuring that (a) the alleged injuries occurred in Missouri, (b) Defendants' conduct occurred in Missouri, and (c) the Missouri Merchandising Practices Act provides the governing law for all Class claims.

54. Because at least two-thirds of all Class members are Missouri citizens, and the principal defendants are Missouri citizens, the Class is subject to the "home-state" and "local-controversy" exceptions to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(4).

55. The Class is so numerous that joinder of all members is impracticable. The exact number and identities of Class members can be determined from Defendants' billing and purchasing records, which identify Warranty Replacement Devices billed to patients.

56. There exist questions of law and fact common to the Class that predominate over any questions affecting only individual members, including:

a. Whether Defendants received Warranty Replacement Devices at no cost;

b. Whether Defendants billed patients for Warranty Replacement Devices they received at no cost;

c. Whether Defendants failed to disclose to patients that they received Warranty Replacement Devices at no cost;

d. Whether Defendants' billing practices violated the MMPA;

e. Whether Defendants were unjustly enriched;

f. Whether Defendants engaged in a civil conspiracy;

g. Whether Plaintiff and Class members suffered ascertainable losses; and

h. The proper measure of damages, restitution, and injunctive relief.

57. Common issues predominate because liability turns on Defendants' uniform billing policies and practices provable with centralized purchase, billing, and claim records.

58. Typicality – Plaintiff's claims are typical of those of the other Class members, as he was subjected to the same uniform billing practice, and Plaintiff has substantially the same interest in this matter as other Class Members. Plaintiff has no interests that are antagonistic to, or in conflict with, the interests of the other members of the Class. Plaintiff's claims arise out of the same set of facts and conduct as all other Class Members.

59. Adequacy of Representation – Plaintiff will fairly and adequately protect the interests of the Class. He has retained counsel experienced in consumer-protection and class-action litigation and has no interests antagonistic to the Class.

60. Superiority – A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by individual Class members are small compared with the expense of individual litigation, and separate actions would risk inconsistent results.

61. Certification is proper under Mo. R. Civ. P. 52.08(b)(3), as there are questions of law or fact common to the class which predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

62. Alternatively, certification is proper under Rule 52.08(b)(1) and/or (b)(2) because separate actions would create a risk of inconsistent adjudications, and Defendants have acted or refused to act on grounds generally applicable to the Class, making injunctive and declaratory relief appropriate.

**Tolling of Statutes of Limitations**

63. Plaintiff, on behalf of himself and the members of the proposed Class, alleges that the filing of Plaintiff's original Petition in Missouri state court on November 12, 2025 tolled any applicable statutes of limitations as to all Class members' claims under well-established principles governing representative and class actions, including but not limited to *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), and its progeny.

64. Specifically, the filing of Plaintiff's original Petition served to toll any limitations periods applicable to the Class's claims for the duration of this action, up to and including any time during which this action remains pending in any court.

65. Tolling is independently appropriate under equitable tolling and fraudulent concealment doctrines because Defendants' overbilling and omissions were not reasonably discoverable by Plaintiff or the Class despite due diligence, given Defendants' exclusive control of billing and claim submission information including, but not limited to, purchase orders and cost data; the technical opacity of hospital billing; and Defendants' failure to disclose that they received the Warranty Replacement Devices at no cost.

66. Defendants' systematic, uniform, and ongoing overbilling practices further constitute a continuing violation, which separately tolls any applicable limitations periods until such practices cease and/or were reasonably discoverable by Plaintiff and the Class.

67. Tolling is further warranted under § 516.100, RSMo, because Plaintiff's and Class members' damages were not capable of ascertainment until after Defendants' deceptive billing and claim submission practices were reasonably discoverable given Defendants' exclusive control over pertinent purchase and billing data.

## VII. CAUSES OF ACTION

### COUNT I — Violation of the Missouri Merchandising Practices Act
***(§§ 407.010 et seq., RSMo)***

68. Plaintiff realleges and incorporates by reference all preceding paragraphs.

69. Defendants are "persons" engaged in trade or commerce within the meaning of § 407.010, RSMo.

70. Medical goods and services constitute "merchandise" as defined in § 407.010(4), RSMo.

71. "Trade or commerce" includes "the advertisement, offer for sale, sale, or distribution of any services or any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated." § 407.010(7), RSMo. Defendants' procurement of Warranty Replacement Devices and billing for hospital and surgical services therefore constitutes "trade or commerce."

72. In connection with such trade or commerce, Defendants engaged in deceptive, unfair, and unlawful practices, including but not limited to:

a. Misrepresenting the cost of Warranty Replacement Devices;

b. Omitting material facts concerning the actual cost of the Warranty Replacement Devices; and

c. Billing and collecting payments based on false or misleading representations of the cost of Warranty Replacement Devices.

73. Defendants' omissions and misrepresentations were material, would mislead a reasonable consumer, and were intended to, and did, induce payment for devices that cost Defendants nothing.

74. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and Class members suffered ascertainable losses under § 407.025, including but not limited to increased financial obligations, inflated patient responsibility amounts, and excessive reimbursement or subrogation liens asserted against recoveries from third-party liability

claims, all of which flowed from Defendants' deceptive billing and claim submission practices.

75. Defendants' conduct constitutes willful and knowing violations of the MMPA. Pursuant to § 407.025.1 RSMo, Plaintiff and the Class seek actual, restitutionary, and punitive damages, reasonable attorney's fees, and equitable relief.

**COUNT II — Unjust Enrichment**

76. Count II is pleaded in the alternative to legal remedies pursuant to Mo. R. Civ. P. 55.10.

77. Plaintiff realleges and incorporates by reference all preceding paragraphs.

78. Defendants knowingly received and retained financial benefits arising from Warranty Replacement Device related charges presented in connection with warranty replacement revision surgeries, including reimbursement and increased patient responsibility amounts, without accurately disclosing that the replacement implantable medical devices were supplied at no cost under manufacturer warranties.

79. Defendants' retention of these payments under circumstances that render their retention unjust, including through billing and claim submission practices that misrepresented or obscured Defendants' actual acquisition costs for Warranty Replacement Devices.

80. Equity and good conscience require Defendants to disgorge their ill-gotten gains.

81. Plaintiff and the Class are entitled to restitution in an amount equal to the sums wrongfully collected, to be determined at trial.

**COUNT III — Money Had and Received / Payment Under Mistake of Fact**

82. Count III is pleaded in the alternative to legal remedies pursuant to Mo. R. Civ. P. 55.10.

83. Plaintiff realleges and incorporates by reference all preceding paragraphs.

84. Defendants received money from Plaintiff and Class members based on their mistaken belief that Defendants paid for the Warranty Replacement Devices as reflected in their billing communications, invoices and account statements.

85. Defendants were not entitled to receive money for Warranty Replacement Devices that they received for free.

86. Because the Warranty Replacement Devices were supplied free of charge under manufacturer warranties, Defendants were not entitled to those payments.

87. Plaintiff and the Class are entitled to recover all sums paid under this mistake of fact.

**COUNT IV — Declaratory and Injunctive Relief**

88. Plaintiff realleges and incorporates by reference all preceding paragraphs.

89. An actual, justiciable controversy exists between the parties concerning the legality of Defendants' billing practices.

90. Plaintiff and the Class seek:

a. A declaration that Defendants' billing for Warranty Replacement Devices that they received for free violates Missouri law and the MMPA; and

b. A permanent injunction prohibiting Defendants from overbilling patients or payors for medical devices that they receive at no cost.

**COUNT V — Civil Conspiracy**

91. Plaintiff realleges and incorporates by reference all preceding paragraphs.

92. Defendants knowingly agreed and acted in concert to implement a system-wide billing practice under which BJC-affiliated hospitals and facilities, including Defendant BJWC, billed patients and received payments from patients (including Plaintiff) and/or patients' payors for Warranty Replacement Devices that they received at no cost.

93. BJC HealthCare formulated, directed, and ratified the billing procedures and compliance policies at issue, while BJWC and other BJC HealthCare-affiliated hospitals and facilities executed those policies by submitting false or materially misleading bills to patients and false or materially misleading claims for payment submitted to payors.

94. Defendants shared a common purpose: to increase hospital system revenues by improperly billing for medical devices they received for free.

95. In furtherance of their conspiracy, Defendants concealed material facts, failed to implement corrective billing measures despite their knowledge of the practice and thereby unjustly profited from the scheme.

96. The unlawful acts underlying this conspiracy include violations of the Missouri Merchandising Practices Act and the wrongful receipt and retention of money obtained through misrepresentation and concealment.

97. Defendants' concerted acts proximately caused financial harm to Plaintiff and the Class.

98. Each Defendant is jointly and severally liable for damages and restitution under Missouri law.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that the Court:

1. Certify this action as a class action and appoint Plaintiff and below referenced counsel as Class Representative and Class Counsel;

2. Award restitution, actual, and punitive damages under § 407.025.1 RSMo; Award reasonable attorney's fees and costs pursuant to § 407.025 and other applicable law;

3. Enter declaratory and injunctive relief as described herein;

4. Order disgorgement of Defendants' ill-gotten gains; and

5. Grant such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable.

Dated: January 23, 2026

Respectfully submitted,

KEVIN WICKHAM, individually and on behalf of all others similarly situated

By: /s/ *Lanny H. Darr II*
*One of Plaintiff's Attorneys*

Lanny H. Darr II (Missouri Bar 42038)
DARR LAW OFFICES, LTD.
307 Henry Street, Suite 406
Alton, Illinois 62002-6326
618.208.6828
darr@darrfirm.com

David L. Gerbie (Illinois Bar 6323942)
Joseph Dunklin (Illinois Bar 6340833)
Donald S. Cuba II (Illinois Bar 6352651)

MCGUIRE LAW, P.C.
55 W. Wacker Drive, Suite 900
Chicago, Illinois 60601
312.893.7002
dgerbie@mcgpc.com/jdunklin@mcgpc.com/dcuba@mcgpc.com
***To Be Admitted Pro Hac Vice***

John Sawin (Illinois Bar 6227112)
SAWIN LAW LTD.
55 W. Wacker Drive, Suite 900
Chicago, Illinois 60601
312.853.2490
jsawin@sawinlawyers.com
***To Be Admitted Pro Hac Vice***

Scott A. Morgan (Illinois Bar 6209550)
MORGAN LAW FIRM, LTD.
55 W. Wacker Drive, Suite 900
Chicago, Illinois 60601
312.327.3386
smorgan@smorgan-law.com
***To Be Admitted Pro Hac Vice***

**CERTIFICATE OF SERVICE**

I hereby certify that on January 23, 2026, I electronically filed the foregoing first amended complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

John D. Comerford
Hannah F. Preston
Robyn L. Parkinson
DOWD BENNETT, LLP
7676 Forsythe Blvd., Suite 1900
St. Louis, MO 63105
jcomerford@dowdbennett.com
hpreston@dowdbennett.com
rparkinon@dowdbennett.com
Attorneys for Defendants Barnes-Jewish
West County Hospital and BJC Health System

/s/ Lanny Darr